## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

CATHERINE B. LAAG, a minor, by her Parent and
Natural Guardian, JOHN LAAG, and JOHN LAAG,
Individually and in his own right,

                Plaintiffs,

             v.

EDWARD J. CULLEN, JR., D.O., JAMES
HERTZOG, M.D. and NEMOURS FOUNDATION
d/b/a A. I. DUPONT HOSPITAL FOR CHILDREN,
a Delaware Corporation,

                Defendants.

:
:
:   Civil Action No.: 04-1306-GMS
:
:
:   JURY TRIAL DEMANDED
:
:
:
:
:
:
:
:

## OPENING BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION IN LIMINE TO
## EXCLUDE THE TESTIMONY OF
## MICHAEL KATZ, M. D. REGARDING LIFE EXPECTANCY

Michael P. Kelly (Del. Bar ID #2295)
A.  Richard Winchester (Del. Bar ID #2641)
Andrew S. Dupre (Del. Bar ID #4621)
McCARTER & ENGLISH
919 North Market Street, St. 1800
P. O. Box 111
Wilmington, DE  19899
(302) 984-6300

Attorneys for Defendants,
Edward J. Cullen, Jr., D.O.,
James Hertzog, M.D. and Nemours
Foundation d/b/a A.I. DuPont
Hospital for Children

Dated: November 17, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

NATURE AND STAGE OF PROCEEDING ................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 1

FACTS ............................................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    I.      Dr. Katz's "Guess" of Plaintiff's Life Expectancy is Inadmissible ........................... 1

          A.     The S-S-A Study is not a reasonable scientific basis for
ignoring its own findings. ........................................................................ 2

          B.     Dr. Katz offers no scientific support for his finding of
improving life expectancy ......................................................................... 3

          C.     Dr. Katz's physical findings are both unscientific and
unsupported by his own opinion ............................................................... 4

          D.     Dr. Katz's "personal experiences" are simply *ipse dixit*
conclusions .............................................................................................. 4

          E.     Rule 702, *Daubert*, and related cases render Dr. Katz's
testimony inadmissible ............................................................................. 4

CONCLUSION ................................................................................................................ 5

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).........................................4

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69 (3rd Cir. 1996)............................5

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997)........................................................5

*In re TMI Litigation*, 193 F.3d 613 (3rd Cir. 1999)..........................................................5

### STATE CASES

*Price v. Blood Bank of Delaware, Inc.*, 790 A.2d 1203 (Del. 2002)...................................5

### FEDERAL STATUTES AND RULES

28 U.S.C. § 1332...........................................................................................................1

Fed. R. of Evid. 702......................................................................................................4

### MISCELLANEOUS

David J. Strauss, Robert M. Shavelle, and Stephen Ashwal, *Life Expectancy and
    Median Survival Time in the Permanent Vegetative State*, 21......................................1

MEI\5344151.1

## NATURE AND STAGE OF PROCEEDINGS

This is a medical malpractice action before this Court by diversity jurisdiction pursuant to 28 U.S.C. § 1332. Discovery is complete, and a trial date is set for January 17, 2006.

## SUMMARY OF ARGUMENT

Dr. Katz's "guess" of Plaintiff's life expectancy, far in excess of all peer-reviewed medical literature on this topic, is an arbitrary, inadmissible, *ipse dixit* conclusion.

## FACTS

Plaintiff, Catherine Laag, claims damages for medical care for the rest of her life. This is a motion to preclude Plaintiff's expert witness, Michael Katz, M.D., from testifying to her life expectancy. Dr. Katz issued his expert report on September 21, 2005 (Exhibit A, the "Report"). He later was deposed. (Exhibit B, the "Deposition"). The Report opines that Plaintiff's life expectancy is ages 28-32, or 18-22 years beyond the onset of her PVS. Ex. A at 3; Ex. B at 42.

The Deposition cites only one study as a basis for his opinion regarding life expectancy: David J. Strauss, Robert M. Shavelle, and Stephen Ashwal, *Life Expectancy and Median Survival Time in the Permanent Vegetative State*, 21 Pediatric Neurology 626 (1999) (Exhibit C, *hereinafter* "S-S-A Study"). The S-S-A Study is a statistical analysis of the records of over 1000 PVS patients cared for by the State of California between 1981 and 1996. This was the "number one" source for Dr. Katz' opinion, as it is the most recent, peer-reviewed study of life expectancy of PVS patients. Ex. B at 37. The S-S-A Study's most optimistic number for life expectancy for patients like Plaintiff is 12.2 years from the onset of PVS, almost half the figure conjured by Dr. Katz. Ex. B at 38.

## ARGUMENT

I.    Dr. Katz's "Guess" Of Plaintiff's Life Expectancy Is Inadmissible.

Dr. Katz described how he reached his opinion on life expectancy in his Deposition:

Q:    How did you arrive at that opinion?
A:    A couple of factors; number one is I took into account the latest article I could find, which is the 1999 article by Strauss, Shavelle and Ashwal. The second thing I took into account was the fact that looking at some of these articles that, sequentially, the life expectancy with time is improving or increasing. The next thing I took into account was my examination of Catherine

1

and my experience going to Vorhees. The next piece of information I took into account was Catherine's lack of medical complications ... So I took the 12.2 [years of life expectancy] which is Strauss' number, his most optimistic number, and that's how I came up with my opinion...
I then read this paragraph in the discussion which says "The mortality rates observed in the present study, though lower than those reported elsewhere, are conservative. If anything, they overestimate the true mortality rate and thus lead to underestimates of life expectancy." ...
I felt given the latest piece of information that I have which is Strauss, Shavelle, Ashwal's article, plus what I physically saw, I thought that [12.2 years of life expectancy] was an underestimate...
Q:      So I said something around 32 years of age, is that what you are saying?
A:      **That's my best guess.** Ex. B at 37-42.

Dr. Katz later revised his sworn testimony: "The term 'best guess' was figurative. The line should read 'My informed opinion.'" See November 11, 2005 Letter from Michael Katz, M.D. to Robert Hunn, Esquire (Exhibit D). The remainder of the Deposition, however, shows that however Dr. Katz now would like to characterize his opinion, it is entirely unsupported by any science. His "method" for determining Plaintiff's life expectancy was to take the biggest number he could find, *then to almost double it.* Dr. Katz's opinion is not the product of any accepted methodology, is not "informed" by any credible source and is, as he originally admitted, nothing more than an arbitrary guess ("the Guess").

A.  The S-S-A Study is not a reasonable scientific basis for ignoring its own findings.

Dr. Katz began his analysis with a life expectancy he took from the S-S-A Study – 12.2 years. Ex. B at 37. Dr. Katz agreed the S-S-A Study is the most recent authoritative study available. *Id.* He also acknowledged that the S-S-A Study states life expectancies that are higher than those in previous studies. Ex. B at 38. In terms of currency, medical authoritativeness, and assistance to Plaintiff's case, the S-S-A Study is the best that medical science has to offer. Dr. Katz nevertheless rejects the findings of the S-S-A Study, his "number one" source in reaching his "Guess." Ex. B at 37. His opinion is that the S-S-A Study's most optimistic life expectancy of a patient like Plaintiff is wrong by ten years, or 81%. His reason for rejecting the S-S-A Study is that the authors cautioned that their life expectancy estimates were "conservative" and "if anything ... lead to underestimates." Ex. B at 38; Ex. C at 630.

Dr. Katz offers no scientific explanation for why he relies on a single phrase, culled from a lengthy study that reaches a contrary conclusion, or why he picked ten years instead of some other equally arbitrary number to compensate for the S-S-A Study's "underestimates." He did not talk to anyone about

2

what the cautionary phrase meant. Ex. B at 49. He did not read any articles or research any studies that discuss such "underestimates." Ex. B at 49-50. He did not find any explanation of the term in the S-S-A Study itself. Ex. B at 50-51. And, he either did not notice or did not care that the S-S-A Study states its findings within a 95% confidence interval, the gold standard for scientific research. Ex. C at 629.[1]

B.  <u>Dr. Katz offers no scientific support for his finding of improving life expectancy.</u>

The second factor Dr. Katz identified was that life expectancies in the general population are increasing. Ex. B at 38. In statistical parlance, there is a "secular trend" toward increasing life expectancies. Dr. Katz assumed from this fact that the life expectancy of PVS patients must also be increasing. That conclusion, however, has been *disproven* by the medical literature regarding PVS: "Secular trends were related to the age of the patient. ... *There was no indication of secular trends for patients 10 years of age or older.*" Ex. C at 629.

More troubling still is Dr. Katz's reason for ignoring the unambiguous science on which he purports to rely. When asked about the lack of a secular trend for increasing life expectancy in PVS patients, Dr. Katz testified "I don't know what secular trend means in day to day [PVS] patients," and that he has "no understanding" of the meaning of "secular trend." Ex. B at 41, 42. This, despite the fact that the medical literature on this topic, especially the S-S-A Study, emphasizes secular trends and their role in estimating life expectancy. *See* Ex. C at 629-630. Rather than looking up the term, or contacting the authors of the S-S-A Study (as the first page of the S-S-A Study invites readers to do) Dr. Katz simply ignores the foundation of the S-S-A Study and uses numbers he does not understand.

---

[1] Dr. Katz also does not justify choosing the S-S-A Study's most optimistic number according to the S-S-A Study's own terms. One of the principal findings of the S-S-A Study, so important that it forms part of the heading, is that patients that require a ventilator or feeding tube have drastically lower life expectancies than patients without those requirements. Ex. C at 626. More precisely, need for a ventilator makes it 246% more likely that a patient will die at any given time, including the early years of a life expectancy range. Ex. C at 629. Need for a feeding tube increases that probability a further 66%. *Id.* Plaintiff uses both. By the terms of the S-S-A Study, Plaintiff is more than three times as likely to expire on the low end of the life expectancy range than a typical PVS patient.

3

C. Dr. Katz's physical findings are both unscientific and unsupported by his own opinion.

Dr. Katz's next factor was his observations during his **one** visit to Plaintiff, which included that: (1) Plaintiff's health is good, and (2) the nursing care that Plaintiff receives is excellent. Ex. B at 38. When questioned on the underlying health of the patients in the S-S-A Study, however, Dr. Katz testified "If it doesn't say in the study, I have no idea ... I just don't know." Ex. B at 49. Dr. Katz's opinion therefore "double counts" any benefit from good health or care that was already included in the maximum life expectancy from the S-S-A Study. On the second point, Dr. Katz ignores that there is no medical evidence indicating that quality of care has any effect on life expectancy. His opinion thus has no scientific or medical support. Ex. B at 41.

D. Dr. Katz's "personal experiences" are simply *ipse dixit* conclusions.

Permeating Dr. Katz's Deposition are references to his "personal experiences" as a neurologist. See Ex. B at 39. The doctor, however, has never conducted or assisted in a life expectancy study. Ex. B at 7. He can remember treating only about six PVS patients. Ex. B at 44. He has no idea if all but one of those are alive or dead. Ex. B at 46. This is not surprising because PVS care is not a significant part of his doctor's practice. Ex. B at 55. Dr. Katz's reliance on "personal experience" is akin to saying "I remember it this way, so trust me." Such expert *ipse dixit* is not scientific, nor is it admissible under Fed. R. of Evid. 702.

E. Rule 702, *Daubert,* and related cases render Dr. Katz's testimony inadmissible.

Expert testimony is governed by Fed. R. of Evid. 702, which codifies *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* offers five factors to determine whether purportedly scientific testimony is sufficiently reliable to be admitted: (a) whether the expert's technique can be tested or challenged in some objective sense; (b) whether the expert's technique has been subjected to peer review and publication; (c) whether the potential error rate of the method is known; (d) the maintenance of standards to govern the application of the technique; and (e) general acceptance in the scientific community. *Id.* at 593-4.

4

Dr. Katz's life expectancy opinion fails to satisfy even one of these factors. Dr. Katz discards the life expectancy findings of authoritative, peer-reviewed research on this topic. His opinion is not based on any accepted scientific methodology. It has no acceptance. It is not and cannot be peer-reviewed (except by comparison to the generally accepted medical science that he rejects, because it proves him wrong), tested, measured for reliability, assessed for error, verified, or repeated. It is based on sloppy or intentional omissions (such as Plaintiff's feeding tube and ventilator having no effect on her life expectancy) or demonstrably false assumptions (such as PVS patients of the plaintiff's age increasing in life expectancy, when, in fact, they are not). His opinion on life expectancy is precisely the type of expert *ipse dixit* that Rule 702 and *Daubert* exist to prevent. See *General Electric Co. v. Joiner*, 522 U.S. 136, 147 (1997).

Dr. Katz's opinion, **which is really just a guess**, discards reliable, peer-reviewed research in favor of unsupported speculation. As such, it is fatally flawed. Expert opinions "must be based on the methods and procedures of science, rather than subjective belief or speculation." *Price v. Blood Bank of Delaware, Inc.*, 790 A.2d 1203 (Del. 2002); *citing In re TMI Litigation*, 193 F.3d 613 (3rd Cir. 1999). If expert opinion is based on speculation or conjecture, it should be stricken. *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69 (3rd Cir. 1996). Dr. Katz's opinion on life expectancy fails the test for admissibility, and should be precluded in its entirety.

## CONCLUSION

For all of these reasons, Defendants pray that their Motion *In Limine* To Exclude The Testimony Of Michael Katz, M. D. Regarding Life Expectancy be granted.

McCARTER & ENGLISH, LLP

MICHAEL P. KELLY (DE ID# 2295)
A. Richard Winchester (DE ID#2641)
Andrew S. Dupre (DE ID#4621)
919 North Market Street, Suite #1800
Wilmington, DE 19899
(302) 984-6300
Attorney for Defendants

Dated: November 17, 2005

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date, he caused to be served a copy of the

foregoing pleading upon the following, counsel of record for the plaintiffs, via electronic filing and

First Class Mail:

> Robert N. Hunn, Esquire
> Kolsby, Gordon, Robin, Shore & Bezar
> Suite 2250, 1650 Market Street
> Philadelphia, PA 19103

McCARTER & ENGLISH, LLP

MICHAEL P. KELLY (DE ID# 2295)
919 North Market Street, Suite #1800
P. O. Box 111
Wilmington, DE 19899
(302) 984-6300
Attorney for Defendants,
Edward J. Cullen, Jr., D.O.,
James Hertzog, M.D. and Nemours
Foundation d/b/a A. I. DuPont
Hospital For Children