# EXHIBIT A

Page 1

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
 2

 3
    CATHERINE B. LAAG, a minor,   :   TRANSCRIPT OF
 4  by her Parent and Natural     :   PROCEEDINGS
    Guardian, JOHN LAAG and       :
 5  JOHN LAAG, Individually and   :
    In his own right,             :
 6                                :
                    Plaintiff,    :
 7       v.                       :
                                  :
 8  EDWARD J. CULLEN, JR., D.O.,  :
    JAMES HERTZOG, M.D., and      :
 9  NEMOURS FOUNDATION d/b/a      :
    A.I. DUPONT HOSPITAL FOR      :
10  CHILDREN, a Delaware          :
    Corporation,                  :
11                                :
                    Defendants.:
12       ---------------
         Tuesday, October 25th, 2005
13       ---------------

14

15      Pretrial examination of MICHAEL D. KATZ,

16  M.D., held at the offices of MICHAEL D. KATZ,

17  M.D., 77 Prospect Avenue, Suite 1K, Hackensack,

18  New Jersey, on the above before DONNA E. KELLS, a

19  Certified Shorthand Reporter and Notary Public of

20  the State of New Jersey.

21

22               ---------------
                CORBETT & ASSOCIATES
23              1400 North French Street
                    P.O. Box 25085
24              Wilmington, Delaware 19899
                    302-571-0510
25
```

1      A.     I'm sorry.

2             MR. HUNN:  Where are you reading from?

3      I'm sorry.

4      A.     I don't see that.

5             MR. HUNN:  Page 1577.

6      A.     Do I agree with that?  I don't agree

7   with it necessarily.

8      Q.     I think I may have asked this.  If I

9   did, I apologize.

10             Do you have any study or article that

11   states otherwise?

12      A.     No, just personal and ethical beliefs.

13      Q.     What do you mean ethical beliefs?

14      A.     Well, I believe that the study of pain

15   specifically, you know, some of the clinical

16   research I've done speaks to the concept of we

17   don't know.  In other words, I think that there's

18   a concept, for example, in surgery.  When patients

19   are under general anesthesia everyone assumes that

20   they can hear what the doctors are talking about.

21   I think especially over the last decade in an

22   operating room people have become very careful

23   about what they say because there is an issue

24   whether leaving someone that underwent anesthesia

25   can understand what we talk about.

Case 1:04-cv-01306-GMS   Document 74-2   Filed 12/08/2005   Page 4 of 4
MICHAEL D. KATZ, M.D.

Page 62

1          I think the same concept occurs for
2  individuals in persistent vegetative state.  By
3  ethical, I mean that I have to assume, even though
4  there is some evidence to the contrary, that these
5  children and these adults have modesty and they
6  feel pain.
7          So I think if the concept is unclear I
8  have to assume that they feel pain.  So when I
9  treat them I treat them the same way as I would
10 treat an individual who was not in a persistent
11 vegetative state.
12         In other words, I take all reasonable
13 precautions to minimize the pain and discomfort
14 when I do any sort of treatment to them.  For
15 example, I put Emla cream, which is cream that
16 numbs their hand or numbs their skin when I take
17 blood or do something like that.  I think that's
18 just an issue of respect for these individuals in
19 PVS.
20    Q.   Did you say that since you don't know
21 if they can feel pain or not that you perform acts
22 like that?
23    A.   What I'm saying is, it is not clear.
24 Medically doctors should, and in general that's
25 pretty much a standard of care.  We have to assume