UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| CATHERINE B. LAAG, a minor, by her Parent and Natural Guardian, JOHN LAAG, And JOHN LAAG Individually and in his Own right, plaintiffs | CASE NO. <br><br> CA 04-1306-GMS |
| vs. | |
| EDWARD J. CULLEN, JR., D.O., JAMES HERTZOG, M.D. and NEMOURS FOUNDATION d/b/a A. I. DuPONT HOSPITAL FOR CHILDREN, A Delaware Corporation | |

**DEFENDANTS' TRIAL BRIEF**

Michael P. Kelly (Del. Bar ID #2295)
A. Richard Winchester (Del. Bar ID #2641)
James J. Freebery (Del. Bar ID #3498)
Andrew S. Dupre (Del. Bar ID #4621)
McCARTER & ENGLISH, LLP
919 North Market Street, St. 1800
P. O. Box 111
Wilmington, DE 19899
(302) 984-6300

Attorneys for Defendants,
Edward J. Cullen, Jr., D.O.,
James Hertzog, M.D. and Nemours
Foundation d/b/a A.I. DuPont
Hospital for Children

Dated: December 29, 2005

# TABLE OF CONTENTS

|  | Page |
|---|---|
| NATURE OF THE CASE | 1 |
| CONTESTED FACTS | 1 |
| LIABILITY DEFENSES | 4 |
| DAMAGES DEFENSES | 5 |
| POSSIBLE MOTION FOR DIRECTED VERDICT | 6 |

5395093v1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Riggins v. Mauriello,* 603 A.2d 827 (Del. 1992)..................................................................... 4

## STATE CASES

*Law v. Law,* 1999 WL 126997 (Del. Ch.).............................................................................. 5

## FEDERAL STATUTES AND RULES

Fed. R. of Evid. 401 ........................................................................................................... 5, 6

Fed. R. of Evid. 403 ........................................................................................................... 5, 6

Fed. R. of Evid. 702 ........................................................................................................... 5, 6

## STATE STATUTES AND RULES

18 *Del.C.* 6862 ..................................................................................................................... 5

ME1\5395093.1

## **NATURE OF THE CASE**

This case presents an allegation of medical negligence by a patient against her treating critical care physician and his employer hospital. At the time of the disputed events, the plaintiff, Catherine Laag, was a ten-year-old child with Downs Syndrome. Ms. Laag was rushed from another hospital to the A.I. DuPont Hospital for Children, owned and operated by Defendant Nemours Foundation, with severe complications related to pneumonia. Ms. Laag's condition required treatment that included running a tube into her lungs to assist her breathing.

After 12 days on artificial life support at A.I. Hospital, Ms. Laag's treating critical care physician, Defendant Edward J. Cullen, Jr., D.O., made a clinical decision that it was appropriate to remove Ms. Laag's breathing tube and to place her on a less invasive means of treatment, a process known as extubation. Following the extubation, numerous attempts at emergency re-intubation by many physicians were required. During this period, Ms. Laag allegedly suffered anoxic brain injury that has left her in a permanent vegetative state (PVS).

Plaintiffs' argue that Dr. Cullen's decision to extubate Ms. Laag fell below the applicable medical standard of care. Plaintiffs' also claim that the Nemours Foundation is liable for Dr. Cullen's alleged medical negligence via the doctrine of *respondeat superior*. There is a significant dispute regarding the amount of damages Ms. Laag is alleged to have suffered.

## **CONTESTED FACTS**

The evidence will show that, in the middle of the night of August 27, 2003, Ms. Laag was rushed to the A.I. DuPont Hospital for Children (A.I. Hospital) from a smaller

1

hospital in New Jersey, due to illness so severe that it required specialized critical care. The necessary treatment included attaching Ms. Laag to a ventilator via a tube inserted down her throat and into her lungs because she was unable to breath for herself (intubation). Ms. Laag hovered on death's door for a period of time before beginning a recovery.

On September 9, 2003, Dr. Cullen made a clinical judgment that it was appropriate to remove Ms. Laag's breathing tube and place her on a less invasive respiratory treatment. Dr. Cullen considered numerous factors in reaching this decision. Breathing tubes such as the one Ms. Laag was using carry a significant risk of causing infections so severe that they can be fatal. They can also, over extended periods such as that experienced by Ms. Laag, damage the trachea, necessitating surgery. This problem is especially acute in children, who frequently are unable to restrain themselves from thrashing about due to the discomfort the breathing tube causes, creating further risks and complications. Ms. Laag was such a patient; the medical records are replete with notes on numerous problems with keeping her sedated and with her agitation. There also was a continuing risk of addicting Ms. Laag to narcotic sedatives as the treating doctors attempted to keep her sufficiently calm to maintain the breathing tube in place.

Dr. Cullen weighed these factors against the risks of extubation, and in particular, the risks associated with a potential need for reintubation. Those risks include a known, unavoidable failure rate, which has generally been held to be about 5% but which is higher in certain groups. There were certain indicia that Ms. Laag might be a riskier-than-normal extubation, including some of the factors listed in Plaintiffs' Trial Brief. However, contrary to Plaintiffs' allegations, the evidence will show there is no bright line

2

test of when (or when not) to extubate, and that an extubation decision depends on the interplay of a number of complex factors and risks unique to each patient. In other words, the decision to extubate is a clinical judgment that balances unique risks and factors, not an application of a generally accepted bright line rule. Dr. Cullen made a reasoned medical judgment that extubation in this case had a potential to be more problematic than a typical extubation, but that Ms. Laag's severe medical problems, the continuing peril caused by the tube, and her unique situation nevertheless warranted taking that step.

After Ms. Laag's extubation, emergency reintubation was required. Contrary to Plaintiffs' allegations, the evidence will show that Dr. Cullen initiated an emergency "code" within seconds of realizing that he could not re-intubate Ms. Laag. At least four well-qualified, highly experienced physicians rushed to the pediatric intensive care unit and attempted to reinsert the breathing tube, all without success. Finally, a highly specialized pediatric Ear, Nose and Throat specialist was able to reintubate Ms. Laag, but only with a much smaller tube and only on his second attempt.

The evidence will not support Plaintiffs' characterization of these events as "the actions of a burned out physician who was simply going through the motions of being a physician without concern for the risks of his conduct." Neither will the evidence support a theory that Dr. Cullen made a secretive decision to extubate Ms. Laag in the face of insurmountable, unnecessary risks. Instead, the evidence will show that Dr. Cullen met the applicable standard of care and at all times acted as a concerned, highly involved, reasonable physician. Now, Dr. Cullen is being blamed for an unavoidable event which followed the tough calls necessary in pediatric care setting. The evidence

3

will further show that similar risks or problems could have occurred whenever Ms. Laag's breathing tube was removed.

## LIABILITY DEFENSES

Dr. Cullen's decision to extubate Ms. Laag was within the applicable medical standard of care, for reasons including:

1. Dr. Cullen weighed the risk factors of extubation against the risk factors of continued use of the breathing tube, including, *inter alia*, tracheal damage, fatal infections, and narcotic dependence. His decision to extubate was the result of a reasoned medical judgment and fell well within the standard of care. *See, Riggins v. Mauriello*, 603 A.2d 827, 829 (Del. 1992).

2. Extubations are subject to a known failure rate. A failed extubation does not indicate medical negligence – failure is a known, unavoidable risk of the procedure.

3. The bright-line test for when to extubate proffered by Plaintiffs' expert is neither generally recognized nor utilized by the relevant medical community. Plaintiffs are attempting to hold Dr. Cullen to an incorrect, artificially high, hindsight-driven standard of care.

4. The difficulty in re-intubation that allegedly aggravated Ms. Laag's injuries was not foreseeable. Dr. Cullen had previously intubated Ms. Laag with minimal difficulty.

5. The complications at issue here were unavoidable and could have occurred regardless of when the breathing tube was removed.

4

## DAMAGES DEFENSES

The damages proffered by Plaintiffs are incorrect for numerous reasons, including:

1. There is no competent evidence supporting Plaintiffs' claim for pain and suffering. PVS patients do NOT experience pain or suffering, and Plaintiffs' experts will not testify that they do. Lay evidence on this topic should be excluded under Fed. R. of Evid. 401, 403, and 702.

2. Plaintiffs' damages expert has proffered a life expectancy number approximately double any that can be found in peer-reviewed medical literature. His opinion is unsupported, unscientific *ipse dixit* that should be excluded under Fed. R. of Evid. 401, 403, and 702.

3. Plaintiffs' economic expert has based his opinion of future medical costs on a life expectancy number double that offered by Plaintiffs' damages expert and four times that found in the authoritative medical literature. This opinion should be excluded under Fed. R. of Evid. 401, 403, and 702.

4. Plaintiffs' calculation of future medical costs uses incorrect methodology.

5. Plaintiffs' future medical costs will be covered by collateral public sources – Medicare and Medicaid. Under Delaware law, public sources are not subject to the exclusion of the collateral source rule. 18 *Del. C.* 6862.

6. Plaintiffs refusal of public source benefits (by, for example, moving Ms. Laag to an uncovered facility or home when her present residence remains available and would warrant public source coverage) constitutes an unrecoverable failure to mitigate damages. *See e.g. Law v. Law*, 1999 WL 126997 at *8

ME1\5395093.1

(Del. Ch.)("The idea that a party must take steps to mitigate a harm is a central principal of our law.") (Exhibit A hereto).

### POSSIBLE MOTION FOR DIRECTED VERDICT

Assuming *arguendo* that Defendants' motions *in limine* are denied, Defendants will likely move for a directed verdict on the following issues:

1. Pain and Suffering: there is no competent evidence that Ms. Laag experiences pain and suffering. Plaintiff's experts acknowledge the medical science that universally holds PVS patients are incapable of experiencing pain. Any lay evidence supporting the pain and suffering claim is therefore in opposition to medical science, speculative, misleading, and unfairly prejudicial. Because the pain and suffering claim will not be supported by any competent, admissible evidence, it fails as a matter of law. Fed. R. of Evid. 401, 403, 702.

2. Defendants reserve the right to move for a directed verdict if Plaintiffs fail to prove by a preponderance of the evidence every element of every claim they have made.

McCARTER & ENGLISH, LLP

/s/ Michael P. Kelly

MICHAEL P. KELLY (DE ID# 2295)
A. Richard Winchester (DE ID#2641)
James J. Freebery (DE ID #3498)
Andrew S. Dupre (DE ID#4621)
919 North Market Street, Suite #1800
Wilmington, DE 19899
(302) 984-6300
Attorneys for Defendants

Dated: December 29, 2005

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 29th day of December, 2005, he caused to be served a copy of the foregoing pleading upon the following, counsel of record for the plaintiffs, via electronic filing and hand delivery:

Robert N. Hunn, Esquire
Kolsby, Gordon, Robin, Shore & Bezar
Suite 2250, 1650 Market Street
Philadelphia, PA 19103

Martin A. Schagrin, Esquire
Berkowitz Schagrin Cooper & Dryden, P.A.
1218 Market Street
Wilmington, DE 19899

McCARTER & ENGLISH, LLP

/s/ Michael P. Kelly

MICHAEL P. KELLY (DE ID# 2295)
919 North Market Street, Suite #1800
P. O. Box 111
Wilmington, DE 19899
(302) 984-6300
Attorney for Defendants,
Edward J. Cullen, Jr., D.O.,
James Hertzog, M.D. and Nemours
Foundation d/b/a A. I. DuPont
Hospital For Children

ME1\5344947.1